**MELVIN AMUNDSON, as Tax Collector of the Town of Hallandale, a municipal corporation of Florida, v. BROWARD COUNTY KENNEL CLUB, INC., a Florida corporation.**

9 So. (2nd) 793                              June Term, 1942
October 2, 1942                              Division A
Rehearing Denied October 21 ,1942

*J. Compton French, Hull, Landis, Graham & French* and *Miller & Fitzsimmons,* for petitioner.

*C. H. Landefeld, Jr.,* and *Ausley, Collins & Ausley,* for respondent.

BUFORD, J.:

The respondent, being plaintiff in the court below, filed bill of complaint in which it was sought to enjoin Tax Collector of the Town of Hallandale from collecting taxes on the lands belonging to the plaintiff. The bill alleges that the lands belonging to plaintiff on which he wishes to enjoin the collection of tax are described as follows: ·

"Lots Two (2), Three (3) and Four (4), SW¼ of Section 22, Township 51 South, Range 42 East, Broward County, Florida, excepting therefrom the following portion of Lot Four (4) : Beginning at the NW corner of said Lot 4, thence easterly 200 feet along the North line of said Lot 4; thence southerly 300 feet on a line parallel with the East line of said Lot 4; thence westerly 200 feet on a line parallel with the North line of said Lot 4; thence northerly 300 feet along the West line of said Lot 4, to the point of beginning.", and averred that said lands were not within the corporate limits of the town. So the bill alleges that the lands are in the SW¼ of Sec. 22, Township 51 South, Range 42 East in Broward County.

The Town of Hallandale was incorporated under Chapter 12791 Special Acts of 1927. The defendant moved to dismiss the bill of complaint and as grounds for motion, inter alia, alleged:

"The allegations of said bill of complaint show affirmatively that the plaintiff's property is located within the corporate limits of the Town of Hallandale.

"That the laws of the State of Florida, of which this Court will take judicial notice, show that the property described in the bill of complaint is located within the corporate limits of the Town of Hallandale."

The motion was· denied and it is to review that order that

certiorari is sought. The sole question here is whether or not *all* of the SW¼ of Sec. 22, Twp. 51 S., R. 42 E., is included within the corporate limits of the Town of Hallandale under the legislative Act, supra. Section 1 of the Act, supra, fixes the corporate limits as follows:

"Beginning at the northwest quarter of the Southeast quarter of Section Twenty-one in Township Fifty-one South of Range Forty-two East; thence running East along the quarter section lines in Sections Twenty-one and Twenty-two in Township Fifty-one South, Range Forty-two East to the Northeast quarter of the Southwest quarter of Section Twenty-two in Township Fifty-one South, Range Forty-two East; thence south along the quarter section lines in Sections Twenty-two and Twenty-seven in Township Fifty-one South, Range Forty-two East to the Southeast quarter of the Southwest quarter of Section Twenty-seven in Township Fifty-one South, Range Forty-two East—being also the Intersection with the Dade County Line; thence running west along the south section lines of Sections Twenty-seven and Twenty-eight in Township Fifty-one South Range Forty-two East to the Southwest quarter of the Southeast quarter of Section Twenty-eight; thence running North along the quarter Section Lines in Sections Twenty-eight and Twenty-one in Township Fifty-one South, Range Forty-two East to the point of beginning all lying and situated in Broward County, Florida."

The description is confusing, but when we analyze the entire description it is, nevertheless, certain. It is a matter of common knowledge that the Quarter Section lines are those lines which divide the sections into the four quarters, being the Northeast Quarter, the Northwest Quarter, the Southeast Quarter and the Southwest Quarter of each section. So, in reading this description, we must determine where the East and West Quarter Section line and the North and South Quarter Section line in Section 21 will each cross the other, and we find that that is the center of the section and that is a point "of the NW¼ of the SE¼." We must then run East along the Quarter Section line to a point where that Quarter Section line intercepts the North and South Section Line in Sec. 22, because when the course is changed the description

requires proceeding South along the Quarter Section line of Sections 22 and 27 and we find that this point is the center of Section 22 and is at the corner of the NE¼ of the SW¼ of that section. Thence we are required to proceed south along the Quarter Section lines in Sections 22 and 28. That carries us south down the middle of each section to the point on the South Section line of Sections 27 and 28. From thence we must proceed West along the South Section lines of Sections 27 and 28 to the Quarter Section line in Section 28 which is found to be also at the SE corner of the SW¼ of the SE¼ of Sec. 28, and thence run north along the Quarter Section line of Sections 28 and 21 to the point of beginning. Thus we have a complete closure and the description is clearly just the same as if it had been as follows:

"Commence at the NW corner of the SE¼ of Sec. 21; run thence East along the Quarter Section line to NE corner of the SW¼ of Sec. 22; thence south along the Quarter Section line to the South line of Section 27; thence West along the south line of South line of Sections 27 and 28 to the SW corner of the SE¼ of Sec. 28 and thence north along the Quarter Section lines in Sections 28 and 21, to point of beginning."

If the description used had not pointed out the Quarter Section lines which were to be followed and the South Section lines of Sections 27 and 28 then the description would have been void for uncertainty. But, as it is written, there is no uncertainty and the legislative description includes all of the SW¼ of Sec. 22, supra.

It, therefore, follows that when the plaintiff alleges in the bill of complaint that the lands involved were located in that quarter-section, the pleading showed affirmatively that the bill was without equity and that plaintiff was not entitled to the relief prayed.

Therefore, the motion to dismiss should have been granted. Certiorari is granted and the order denying motion to dismiss is quashed and the cause remanded with directions that the bill of complaint be dismissed.

So ordered.

BROWN, C. J., WHITFIELD, and ADAMS, JJ., concur.